### B. F. SURFACE v. JOHN LEFFINGWELL.
#### No. 267.

CONTRACT OF SALE—*reservation of crops in letters constituting, of land enforced as contemporaneous with deed.* Where the entire agreement for the sale and purchase of a farm consisted of letters, and the deed was executed, delivered, and accepted as the result of such correspondence and without any other or different agreement or contract, *held,* that such correspondence constituted a contract, and that such contract was contemporaneous with the deed, and that by such contract the grantor might reserve the immature crops.

Error from Republic District Court.   Hon. F. W. Sturges, Judge.   Opinion filed November 15, 1897. *Affirmed.*

*W. T. Dillon,* for plaintiff in error.

*B. T. Bullen,* for defendant in error.

McELROY, J.   This was an action in replevin, brought by B. F. Surface, plaintiff in error, against John Leffingwell, defendant, for the recovery of personal property.   The case was tried before the court and jury.   At the close of the testimony the court discharged the jury and rendered judgment against the plaintiff for costs.   The plaintiff filed a motion for a new trial, which was overruled, and he now presents the case to this court for review.

The defendant, prior to August 5, 1896, was the

owner of the east half of section 13, township 1 south, range 2 west sixth P. M., upon which the plaintiff held a mortgage. On the fifth day of August, the lands were conveyed to Surface as a result of a correspondence which had taken place between the parties prior to that date. At that date there was a considerable portion of the farm in immature corn and sorghum. Whatever contract was made between the parties in regard to the sale and conveyance of the real estate was made by correspondence, and such correspondence consists of three letters, as follows:

"Belleville, Kan., July 26, 1895.

"*John Leffingwell* : Dear Cousin — I have been thinking of what we were talking about the other day regarding that land deal. I can't give up the personal note of $270, but I tell you what I will do. I will still hold the $270 note against you, and in addition to this pay me seventy-five dollars, give me a warranty deed to the place, and I will turn over to you the real-estate notes I hold against you. Now, this is the best I think I can do. Please let me hear from you regarding this deal at once, for I want the matter finished up. Your cousin and friend,

B. F. Surface."

"Hubbell, Neb., July 28, 1895.

"Dear Cousin : Your letter came to hand and contents carefully noted. We have been thinking our matters over and have changed our minds about the $270 note you hold against us. We have thought this matter over, and we think that it is right for us to pay that note as soon as we can, as that does not concern our real-estate deal. And, of course, we got what we thought at that time value received for that note, and, of course, it looks hardly right to ask you to give us that note for nothing; and, as I have said before, I want to do as near what is right as I know how. Now, Ben, as to the seventy-five dollars. I just can't pay that, for our crop is just about gone, and there is no use in me prom-

ising to pay any more; besides, I believe you will come as near getting out of this as we ever can. For, Ben, I will tell you it is a pretty hard thing to think about — that Jennie and myself have both worked as hard as we have for the past seven years on this place — seven years of the best part of our lives — and not reap a single dollar, and be left without a sign of a home, and it don't look as though we would ever have any; and I tell you Ben, it is different with you and Mattie. Now, Ben, as we have both said before, there is nobody to blame for this. I don't care as much for myself as I do for Jennie. The poor girl is sitting on the porch alone, studying her head off about this thing. You see, Ben, while you are bound to lose money, you and Mattie have not done hard work that Jennie has done here; besides, we have got to lose money too, but I hope there is a better time coming for all of us. Now, Ben, if you want to give up the real-estate notes and take the place back, we will come and sign the place back to you, and we will all do the best that we can in the future. But that is all that I can do anyway, as you know I cannot pay my other debts, besides promising any more. Let me hear from you soon, and if you want to make the trade we will come up at once and fix up the papers. We are all well as usual. The corn can't stand the hot weather many more days, and it won't make much corn if it does rain soon; but I am afraid we have gone up for a crop this time. Your friend and cousin,

JOHN LEFFINGWELL."

"BELLEVILLE, KAN., August 1, 1895.

"*Mr. John Leffingwell:* DEAR COUSIN —I have just been thinking over your proposition to me concerning taking the farm back. I just can't accept your proposition, but I will now tell you what I will do. You may make me a warranty deed to the place, and give me seventy-five dollars, or enough to pay back taxes and interest due, and we will call it a trade. This in no way includes the $270 personal note.

"I inclose you a deed to the land, already filled out, and if you accept my proposition you can send the

322      SURFACE V. LEFFINGWELL.

| N. Dept. | Opinion. McElroy, J. | 6 Kan. App. |

deed to me after executing it, or leave it at Conklin's bank and get the real-estate notes.

"Now, if you accept this proposition, you may stay there and mature the crops and I will not expect anything off of the place until next fall. Your cousin and friend,      B. F. SURFACE."

The only serious question in this case is as to whether or not the correspondence constitutes a written contract contemporaneous with the deed. There was no reservation of the crops in the deed of conveyance. The only agreement made for the sale, purchase and conveyance of the land in question is contained in the lettters above set out. In the first letter the plaintiff submits, that he would not surrender the $270 note which he held against Leffingwell; that Leffingwell pay seventy-five dollars to plaintiff; that he, Surface, would cancel and surrender the real-estate notes which he held against Leffingwell. Immediately upon receipt of this letter, Leffingwell wrote the plaintiff, consenting that the plaintiff keep the $270 note and consenting to the execution of the deed, but refusing to pay the plaintiff the seventy-five dollars demanded.

Thus it will be seen that, prior to the writing of the last letter by Surface, the defendant accepted each proposition made by Surface, except the payment of the seventy-five dollars. In the third letter Surface inclosed a deed and again insisted upon the payment of the seventy-five dollars — or enough to pay back taxes and interest due, which was about forty-one dollars—, and as an inducement, said : "Now, if you accept this proposition, you may stay there and mature the crops, and I will not expect anything off of the place until next fall." "Now, if you accept this proposition you may stay there" — stay where? Evidently upon the premises conveyed. And,

again, "and mature the crops." For whose benefit? Certainly it was the intention that Leffingwell should mature the crops for himself.

The deed was executed and delivered as the result of this correspondence, and without any other or different agreement or contract. This correspondence constitutes a written contract for the sale and purchase of the real estate in question, and by such contract the grantor reserved the immature crops. It was conceded at the trial that these letters constituted the only agreement upon which the deed was executed, and that it was the duty of the court to construe the contract and render judgment accordingly. The plaintiff asked the court to instruct the jury:

"The question as to whether the writings relied upon by the defendant are sufficient at law, and as to whether said contract does by its terms reserve the crop to the defendant, are questions for the court to decide and not for the jury, and you are hereby instructed by the court that the writings presented by the defendant and relied upon by him in this case, did not have the effect to reserve the crop to him."

We think the court properly construed the letters as constituting a contract, that such contract was cotemporaneous with the deed of conveyance, and that by such contract the immature crops were reserved by the grantor.

There is one other question presented by the record in this case, and that is as to whether or not the parties to this suit settled the matters in controversy prior to the commencement of this action. From what we have said, it follows that it is unnecessary to comment upon this phase of the case.

The judgment is affirmed.